**John E. Phillips, Attorney at Law, P.C.**
975 N. Silverbell Rd. #87968
Tucson, AZ  85754
Telephone: (520) 441-2800
E-mail: John@Johnephillips.com
State Bar Number: 015243
Attorney for Plaintiff

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| Carrol Debusk,<br>         Plaintiff,<br>   vs.<br>The Lincoln National Life Insurance Company, LGAA, LLC; LGAA, LLC's Insurance Plan,<br>         Defendants. | Case No:<br><br>**Complaint** |

Now comes the Plaintiff Carrol Debusk (hereinafter referred to as the "Plaintiff"), by and through her attorney, John E. Phillips, and complaining against the Defendants, she states:

## Jurisdiction

1. Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits. In addition, this action may be brought before this Court pursuant to 28 U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

## Parties

2. Plaintiff is a resident of Yavapai County, Arizona.

3. Upon information and belief, LGAA, LLC. (hereinafter "Company"), sponsored, administered, and purchased a group long term disability insurance policy which was insured by The Lincoln National Life Insurance Company (hereinafter

"Lincoln"). The specific Lincoln group disability policy is known as Policy No. 00001018804400000 (hereinafter referred to as the "Policy"). The Company's purpose in sponsoring, administering and purchasing the Lincoln policy was to provide disability insurance for its employees. Upon information and belief, the Lincoln policy may have been included in and part of the Group Long Term Disability Plan for Employees of LGAA, LLC (hereinafter "Plan") and was created to provide the Company's employees with disability benefits. At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

4. Upon information and belief, Lincoln functioned as the claims administrator of the policy; however, pursuant to the relevant ERISA regulation, the Company and/or the Plan may not have made a proper delegation or properly vested fiduciary authority or power for claim administration in Lincoln. The Company is responsible for Lincoln's actions and decisions.

5. Lincoln operated under a conflict of interest in evaluating Plaintiff's long-term disability claim due to the fact that it operated in dual roles as the decision maker with regard to whether Plaintiff was disabled as well as the payor of benefits.

6. Lincoln saved money when it denied Plaintiff's claim.

7. The Company, Lincoln, and the Plan are present within Yavapai County and the events giving rise to this Complaint, including the breech, occurred within the State of Arizona.

**Venue**

8. Venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391.

**Nature of the Complaint**

**COUNT 1 - ERISA**

9. Incident to her employment, Plaintiff was a covered employee pursuant to the Plan and the relevant Policy and a "participant" as defined by 29 U.S.C. §1002(7). Plaintiff seeks disability income benefits from the Plan and the relevant Policy pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B), as well as any other employee

benefits she may be entitled to from the Company, the Plan and/or any other Company Plan as a result of being found disabled in this matter.

10. After working for the Company as a loyal employee for years, Plaintiff became disabled due to serious medical conditions and was unable to work in her Own Occupation as a Policyholder-Information Clerk (DOT[1] # 249.262-010). Plaintiff has remained disabled as that term is defined in the relevant Policy continuously since June 25, 2018 and has not been able to return to work in any occupation as a result of her serious medical conditions.

11. The relevant Lincoln policy and definition of disability governing Plaintiff's long-term disability claim is as follows:

> DISABILITY or DISABLED means Total Disability or Partial Disability.
>
> TOTAL DISABILITY or TOTALLY DISABLED will be defined as follows.
>
> > 1. During the Elimination Period and Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of his or her Own Occupation.
> >
> > 2. After the Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of any occupation which his or her training, education or experience will reasonably allow.
>
> PARTIAL DISABILITY or PARTIALLY DISABLED will be defined as follows.
>
> > 1. During the Elimination Period and Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee:
> >
> > > a. is unable to perform one or more of the Main Duties of his or her Own Occupation; or is unable to perform such duties full-time; and
> > >
> > > b. is engaged in Partial Disability Employment.

---

[1] Dictionary of Occupational Titles

> 2. After the Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee:
>
>> a. is unable to perform one or more of the Main Duties of any occupation which his or her training, education or experience will reasonably allow; or is unable to perform such duties full-time; and
>>
>> b. is engaged in Partial Disability Employment.
>
> PARTIAL DISABILITY EMPLOYMENT means the Insured Employee is working at his or her Own Occupation or any other occupation; however, because of a Partial Disability:
>
>> 1. the Insured Employee's hours or production is reduced;
>> 2. one or more Main Duties of the job are reassigned; or
>> 3. the Insured Employee is working in a lower-paid occupation.
>
> During Partial Disability Employment, his or her current earnings:
>
>> 1. must be at least 20% of Predisability Income; and
>> 2. may not exceed the percentage specified in the Partial Disability Benefit section.
>
> MAIN DUTIES or MATERIAL AND SUBSTANTIAL DUTIES means those job tasks that:
>
>> 1. are normally required to perform the Insured Employee's Own Occupation; and
>> 2. could not reasonably be modified or omitted.

12. Plaintiff's application for long term disability benefits was received by Lincoln on October 19, 2018. Under 20 C.F.R. § 2560.503-1(f)(3), Lincoln is required to render a decision not later than 45 days after receipt of the claim, unless circumstances beyond Lincoln's control require an extension of 30 days. If necessary, Lincoln was able to seek an additional 30-day extension, but would need to explain in a notice to Plaintiff:

   a. The circumstances requiring the extension and the date as of which the plan expects to render a decision;

       b. The unresolved issues that prevent a decision on the claim;

       c. The additional information needed to resolve those issues; and

       d. And the claimant shall be afforded at least 45 days within which to provide the specified information.

13. On January 15, 2019, Lincoln notified Plaintiff that Lincoln would be "happy to continue our review" and make a determination once Plaintiff submitted "gastrointestinal consults performed from June 1, 2018 to current," but also informed Plaintiff could not reinstate benefits at that time and informed Plaintiff she could appeal "this denial notice."

14. Lincoln's extension notice did not provide Plaintiff notice of what circumstances outside Lincoln's control was beyond Lincoln's control, what unresolved issues prevented a decision on Plaintiff's claim, what additional information was needed to resolve those issues, and Lincoln's extension notice was untimely.

15. Even if Lincoln's extension notice were valid, Lincoln was able to render a decision February 1, 2019, 105 days after receipt of Plaintiff's claim, at the latest.

16. On February 14, 2019 Lincoln found Plaintiff not eligible for long-term disability benefits finding the report of a non-examining medical consultant, Dr. Krishna Padiyar who was hired by Lincoln on January 25, 2019, indicated Plaintiff was not impaired from June 25, 2018 through February 8, 2019. Lincoln did not provide Plaintiff the opportunity to rebut the report of Dr. Padiyar prior to Lincoln rendering their denial of Plaintiff's claim nor did Lincoln identify what the main duties of Plaintiff's Own Occupation is, information which is necessary to perfect Plaintiff's claim under the Policy.

17. Lincoln had the authority under the Policy to have Plaintiff examined by a medical source of their choice, but chose not to.

18. Plaintiff's appeal was received by Lincoln on August 9, 2019. As part of Plaintiff's appeal to Lincoln, the medical statement and treatment records of treating physician Dr. Kaveh Karandish were submitted to Lincoln for consideration.

19. Plaintiff's treating physician Dr. Kaveh Karandish rendered a report on August 8, 2019, finding Plaintiff's neuropathy results in significant limitations, as follows:

    a. Plaintiff could only lift or carry less than 5 pounds occasionally, less than 5 pounds frequently.

    b. Plaintiff could only stand and be productive less than 1 hour in an 8 hour working day.

    c. Plaintiff could only sit and be productive less than 1 hour in an 8 hour working day.

    d. Plaintiff would be absent from work about three or four times a month.

    e. Plaintiff could never safely climb or balance.

    f. Plaintiff could only occasionally: stoop, kneel, crouch, or crawl.

    g. Plaintiff would be 80 percent limited in handling, 90 percent limited in feeling, and 90 percent limited in fingering.

20. As Lincoln either failed to determine, or refused to disclose, what the main or important duties of Plaintiff's own occupation are, Vocational Expert Mr. Mark Kelman conducted an extensive vocational interview to determine these facts. Mr. Kelman determined Plaintiff's own occupation was as a Policyholder-Information Clerk (DOT 249.262-010). Mr. Kelman determined the duties of Plaintiff's work parallel the physical requirements of her usual and customary work as defined in the DOT, and particularly noted the Company's job description that Plaintiff's work consisted of a "high pressured, fast paced environment with significant telephone and personal disruption" would be a significant factor for consideration, given Plaintiff's difficulty inputting on a computer would negate being successful at inputting information on a timely basis due to significant fingering of the keyboard. Mr. Kelman also determined the limitations as found by Dr. Karandish would preclude performance of Plaintiff's own occupation, specifically Dr. Karandish's limitations in regard to sitting and keyboarding, finding these limitations would preclude competitive employment in a related capacity, or even any work at the sedentary level.

21. Under 29 C.F.R. § 2560.503-1(h)(3), Lincoln is required to establish specific procedures and apply them in connection with an appeal of an adverse benefit determination, in relevant part:

    a. Provide claimants at least 180 days following receipt of a notification of an adverse benefit determination within which to appeal the determination;

    b. Provide for a review that does not afford deference to the initial adverse benefit determination and that is conducted by an appropriate named fiduciary of the plan who is neither the individual who made the adverse benefit determination that is the subject of the appeal, nor the subordinate of such individual;

    c. Provide that, in deciding an appeal of any adverse benefit determination that is based in whole or in part on a medical judgment, including determinations with regard to whether a particular treatment, drug, or other item is experimental, investigational, or not medically necessary or appropriate, the appropriate named fiduciary shall consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment;

    d. Provide for the identification of medical or vocational experts whose advice was obtained on behalf of the plan in connection with a claimant's adverse benefit determination, without regard to whether the advice was relied upon in making the benefit determination; and

    e. Provide that before the plan can issue an adverse benefit determination on review on a disability benefit claim, the plan administrator shall provide the claimant, free of charge, with any new or additional evidence considered, relied upon, or generated by the plan, insurer, or other person making the benefit determination (or at the direction of the plan, insurer or such other person) in

connection with the claim; such evidence must be provided as soon as possible and sufficiently in advance of the date on which the notice of adverse benefit determination on review is required to be provided under paragraph (i) of this section to give the claimant a reasonable opportunity to respond prior to that date.

22. Under 29 C.F.R. § 2560.503-1(j), the notification of benefit determination on review must contain, in relevant part:

    a. The specific reason or reasons for the adverse determination;

    b. Reference to the specific plan provisions on which the benefit determination is based;

    c. If an internal rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination, either the specific rule, guideline, protocol, or other similar criterion; or a statement that such rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination and that a copy of the rule, guideline, protocol, or other similar criterion will be provided free of charge to the claimant upon request; and

    d. A discussion of the decision, including an explanation of the basis for disagreeing with or not following:

        i. The views presented by the claimant to the plan of health care professionals treating the claimant and vocational professionals who evaluated the claimant;

        ii. The views of medical or vocational experts whose advice was obtained on behalf of the plan in connection with a claimant's adverse benefit determination, without regard to whether the advice was relied upon in making the benefit determination; and

        iii. A disability determination regarding the claimant presented by the claimant to the plan made by the Social Security Administration.

23. Failure to satisfy any of the requirements set forth in 29 C.F.R. §§ 2560.503-1(h)(3) or (j) establish Lincoln did not provide Plaintiff a full and fair review of the adverse benefit determination under 20 C.F.R. § 2560.503-1(p)(4)(ii).

24. On December 4, 2019 Lincoln denied Plaintiff's appeal but did not explain why they disagreed with the findings of Dr. Karandish and Mr. Kelman which support disability under the Policy. Also, for the first time, Lincoln defined Plaintiff's Own Occupation's main duties as:

    a. Analyzes and answers requests by mail, telephone, or in person from policyholders, beneficiaries, or others for information concerning insurance policies;

    b. Searches company records, to obtain information requested by customer;

    c. Estimates loan or cash value of policy for policyholders, using rate books and calculating machine;

    d. Interprets policy provisions to determine methods of effecting, desired changes, such as change of beneficiary or type of insurance, or change in method of payment;

    e. Mails or gives out specified forms and routes completed forms to various units for processing;

    f. Analyzes policy transactions and corrects company records to adjust errors; and

    g. A Policyholder-Information Clerk in the national workforce is a Sedentary physical capacity occupation. The definition of Sedentary work is: Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are only required occasionally (1-

33%) and if all other sedentary criteria are met. Sedentary work may require exertion up to 10 lbs. occasionally and a negligible degree of exertion on a frequent (34-66%) or constant (67-100%) basis.

25. Plaintiff's final appeal was received by Lincoln on May 28, 2020. As part of this appeal, Plaintiff provided a copy of the findings of the Social Security Administration, consultative examiner and physician assistant Anna Symond retained by the Social Security Administration confirming Plaintiff is impaired to the extent she could not perform her Own Occupation, the report of vocational expert Mr. Mark Kelman, and updated treatment records from Dr. Karandish.

26. On September 22, 2020 Lincoln denied Plaintiff's appeal finding Plaintiff was "no longer totally disabled under the terms of our policy," rejected the findings of PA Symond and the Social Security Administration asserting the Social Security Administration determines disability based on a claimant's "condition alone, without regard to work capacity" which is incorrect as a matter of both the Social Security Act and ERISA.

27. Plaintiff filed for Social Security Disability Benefits and was found disabled by the Social Security Administration after being found incapable of performing her Own Occupation, or any occupation in the national economy as of June 25, 2018.

28. The Social Security Administration has determined that due to Plaintiff's severe disability, Plaintiff ***cannot engage in any substantial gainful employment of any kind***. In Plaintiff's Own Occupation or any occupation, which is a higher standard than set forth in the Policy.

29. Lincoln is required under 29 C.F.R. § 2560.503-1(g)(v)(A)(*iii*) to explain why they disagree or do not follow the findings of the Social Security Administration.

30. The inability to perform any of the main duties of Plaintiff's Own Occupation is sufficient to establish an inability to perform each of the main duties of her Own Occupation.

31. Lincoln relied on the report of Dr. Padiyar throughout Plaintiff's claim process, a report which was not even requested by Lincoln until after Lincoln's untimely,

deficient, extension notice. Ultimately, Lincoln did not provide an explanation of the basis for disagreeing with the findings of the Social Security Administration, PA Symond, treating physician Dr. Karandish, and Mr. Kelman.

32. Upon information and belief, Lincoln has a financial conflict of interest both acting as claim administrator and payor of any benefits awarded under the Policy.

33. Upon information and belief, Dr. Padiyar has a financial conflict of interest due to his contractual relationship as a retained expert for Lincoln.

34. Upon information and belief, Lincoln relied solely on employees of Lincoln to reject the findings of the Social Security Administration and all evidence submitted to Lincoln subsequent to the report of Dr. Padiyar, employees who inherently have a financial conflict of interest due to their employee-employer relationship with Lincoln.

35. Plaintiff is entitled to discovery regarding the aforementioned conflicts of interest of Lincoln and any individual who reviewed her claims so that the Court may properly weigh and consider extrinsic evidence regarding the nature, extent and effect of any conflict of interest and/or ERISA procedural violation which may have impacted or influenced Lincoln's decisions to deny her claims.

36. In evaluating Plaintiff's claim on appeal, Lincoln had an obligation pursuant to ERISA to administer Plaintiff's claim, "solely in her best interests and other participants" which it failed to do[2].

37. Lincoln failed to adequately investigate Plaintiff's claim and failed to engage Plaintiff in any dialogue whatsoever during the appeal of her claim with regard to

---

[2] ERISA sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" with respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989) (quoting § 1133(2)); and it supplementing marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

what evidence was necessary so Plaintiff could perfect her appeal and claim. Lincoln's failure to investigate the claim and to engage in this dialogue or to obtain the evidence it believed was important to perfect Plaintiff's claim is a violation of ERISA and Ninth Circuit case law and a reason she did not receive a full and fair review.

38. Plaintiff believes Lincoln provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, for the following reasons which include, but are not limited to:

   a. Failing to adequately evaluate and consider the approval of Plaintiff's Social Security Administration claim;
   b. Failing to credit the findings of treating physician Dr. Karandish and PA Symond;
   c. Failing to adequately investigate Plaintiff's claim;
   d. Providing one sided reviews of Plaintiff's claim that failed to consider all evidence submitted by Plaintiff and/or that de-emphasized medical and vocational evidence which supported Plaintiff's claim;
   e. Disregarding Plaintiff's self-reported symptoms;
   f. Failing to consider all the diagnoses and/or limitations set forth in the medical evidence as well as the impact the combination of those diagnoses and impairments would have on her ability to work;
   g. Failing to engage Plaintiff in a dialogue so Plaintiff could submit the necessary evidence to perfect her claim;
   h. Failing to consider the impact the side effects from Plaintiff's medications would have on her ability to engage in any occupation;
   i. Failing to consider Plaintiff's brief submitted along with Plaintiff's second appeal;
   j. Failing to identify the experts upon which Lincoln considered in denying Plaintiff's first and second appeal; and
   k. Failing to timely resolve Plaintiff's claim.

39. The standard of review for this Court to apply is *de novo* as the Policy does not contain discretionary language.

40. Pursuant to 29 U.S.C. § 1132, Plaintiff is entitled to recover unpaid benefits, prejudgment interest, reasonable attorney's fees and costs from Defendants.

41. Plaintiff is entitled to prejudgment interest at the legal rate pursuant to ARS § 20-462, or at such other rate as is equitable and appropriate to compensate her for losses she incurred as a result of Defendants' nonpayment of benefits.

42. Plaintiff is entitled to the immediate initiation of the benefit payments of $2,205.43 from 90 days after June 25, 2018 due to the elimination period, September 23, 2018 until the age of 65 or the total amount of $383,744.82 in future benefits.

43. As a direct result of Lincoln decision to deny Plaintiff's disability claim and failure to provide a full and fair review of Plaintiff's disability claim, she has been injured and suffered damages in the form of lost long-term disability benefits, in addition to other potential employee benefits she may have been entitled to receive through or from the Plan and/or Company as a result of being found disabled. Plaintiff believes other potential employee benefits may include but not be limited to, health and other insurance related coverage or benefits, retirement benefits or a pension, life insurance coverage and/or the waiver of the premium on a life insurance policy providing coverage for her and her family/dependents.

**COUNT 2 – Violation of the implied covenant of good faith and fair dealing.**

44. Plaintiff incorporates by reference the facts alleged in paragraphs 1-41.

45. The Policy binds Defendants to comply with the minimum requirements of the law, in order to conform to state statutes.

46. Arizona law recognizes in every contract an implied covenant of good faith and fair dealing exists. *Wells Fargo Bank v. Arizona Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 490, 38 P.3d 12, 28 (2002); A.R.S. § 47-1304 ("Every contract or duty within this title imposes an obligation of good faith in its performance and enforcement.")

47. Because of the nature of insurance contracts, insurance companies are required to "play fairly with [their] insured[s]." *Zilisch v. State Farm Mutual Auto Ins. Co.*, 196 Ariz. 234, 237, 995 P.2d 276, 279 (2000) (*en banc*). Insureds are "entitled to receive the additional security of knowing that [they] will be dealt with fairly and in good faith." *Id.* at 238. The accompanying duty requires "that neither party will act to impair the right of the other to receive the benefits which flow from their agreement or contractual relationship." *Rawlings v. Apodaca*, 151 Ariz. 149, 153, 726 P.2d 565, 569 (1986).

48. The Policy requires that, in order to determine Plaintiff is totally disabled, as a result of injury or sickness, Plaintiff must be unable to perform each of the main duties of any occupation which her training, education, or experience will reasonably allow. As such, the inability to perform even a single, main duty of Plaintiff's Own Occupation requires award of Plaintiff's disability benefits under the Policy.

49. In order for an insurer to have a good faith basis to deny a claim, the claim's validity must be fairly debatable. *Rawlings*, 151 Ariz. 149 at 156.

50. Upon information and belief, Defendant failed even debatably to develop evidence of any kind to rebut the presumptively valid findings of treating physician Dr. Karandish prior to Lincoln's untimely extension notice on January 15, 2019.

51. Plaintiff is entitled to the immediate initiation of the benefit payments of $2,205.43 from 90 days after June 25, 2018 due to the elimination period, September 23, 2018 until the age of 65 or the total amount of $383,744.82 in future benefits

**COUNT 3 – Bad Faith**

52. Plaintiff incorporates by reference the facts alleged in paragraphs 1-49.

53. An Insurer acts in bad faith where it "intentionally denies, fails to process, or pay a claim without a reasonable basis." *Zilisch*, 196 Ariz. 234 at 279.

54. The legal test is whether "reasonable jurors could conclude that in the investigation, evaluation, and processing of the claim, the insurer acted unreasonably and either knew or was conscious of the fact that its conduct was unreasonable." *Id*.

55. Lincoln's position throughout the administrative claim is Plaintiff is not limited in any way.

56. Lincoln is required under ERISA to actually provide rationale for rejecting the statements of Plaintiff's treating physicians and the findings of the Social Security Administration, which is wrong as a matter of law.

57. But Lincoln's actions go beyond violation of statute, as Lincoln consistently has misinformed Plaintiff as to her legal rights under ERISA.

58. Each time Plaintiff appealed, Plaintiff specifically requested what, if any, additional evidence was necessary to perfect Plaintiff's claim. Plaintiff has this right under 29 C.F.R. § 2560.503-1(g).

59. Each time, Defendant indicated they would not inform Plaintiff of what additional evidence was necessary as they "do not direct the care needed" for Plaintiff and are "unable to specifically outline what information would support."

60. Defendant engaged in bad faith in refusing to disclose what additional information would be necessary to support Plaintiff's claim as Defendant has an obligation not just to provide an opportunity for review, but also what additional information would be necessary to perfect the claim. *Montour v. Hartford Life & Acc. Ins. Co.*, 588 F.3d 623, 363 (9th Cir. 2009) citing *Chuck v. Hewlett Packard Co.*, 455 F.3d 1026, 1032 (9th Cir.2006).

WHEREFORE, Plaintiff prays for judgment as follows:

A. For an Order requiring Defendants to pay Plaintiff her long term disability benefits, and any other employee benefits as referenced herein that she may be entitled to as a result of being found disabled pursuant to the Policy, from the date she was first denied these benefits through the date of judgment and prejudgment interest (pursuant to ARS § 44-1201(b)) thereon which amounts to as of the filing month of this complaint $84,059.96;

B. For an Order directing Defendants to continue paying Plaintiff the aforementioned benefits until such time as she meets the conditions for termination of benefits as set forth in the Policy;

    C.    For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. §1132(g);

    D.    Imposition of a constructive trust; and

    E.    For such other and further relief as the Court deems just and proper.

**DATED** this 9th day of April, 2021.

        /s/John E. Phillips
JOHN E. PHILLIPS,
Attorney at Law, P.C.
Attorney for Plaintiff

## VERIFICATION

STATE OF ARIZONA    )
                                      )ss:
COUNTY OF YAVAPAI )

**Carrol Debusk**, being first duly sworn, under oath states:

1. I am the Plaintiff in the above-entitled matter.

2. I make this Verification based upon my personal knowledge, information or belief.

3. I have read the foregoing Complaint and know the contents therein.

4. The facts and matters alleged in the Complaint are true in substance and in fact to the best of my knowledge, except to those matters alleged on information and belief and, as to those I believe them to be true.

_/s/ Carrol Debusk_
Carrol Debusk

John E. Phillips, Attorney at Law, P.C.
975 N. Silverbell Rd. #87968
Tucson, AZ 85754
Telephone: (928) 717-0977
E-mail: John@Johnephillips.com
State Bar Number: 015243